# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

SANDRA M. FERRERA, on behalf of herself
and all others similarly situated,

     Plaintiff,

v.

AMERICAN HONDA MOTOR CO. INC. d/b/a ACURA,

     Defendant.

_____/

### CLASS ACTION

#### JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Sandra M. Ferrera files this class action complaint on behalf of herself and all others similarly situated against Defendant American Honda Motor Co. Inc. d/b/a ACURA, ("Defendant" or "Acura"), and alleges as follows:

## I.    INTRODUCTION

1.    For at least the past four years, Acura has been manufacturing, advertising, selling, and leasing cars with an acceleration defect that threatens occupants' safety. Rather than accelerate in response to the driver compressing the accelerator pedal, select Acura models decelerate rapidly, stall, and effectively shut down without warning, and then suddenly regain power and continue to operate as if nothing had occurred. This dangerous issue can arise at high speeds, such as when changing lanes or passing other vehicles on the highway, when reliable acceleration is required for driver and passenger safety.

2.    All 2016 through 2020 Acura MDX and RDX models share this common, uniform defect (the "Class Vehicles"). Under normal conditions, the Class Vehicle may not respond to normal driver input, leaving drivers and passengers in a vehicle travelling at unexpected speeds in

scenarios that may lead to loss of control, collision, bodily harm, and potentially death.

3.     This acceleration problem is a "safety-related defect," as defined by the National

Highway and Traffic Safety Administration (NHTSA).  NHTSA defines safety defects as:

> A problem that exists in a motor vehicle or item of motor vehicle equipment that: poses an unreasonable risk to motor vehicle safety, and may exist in a group of vehicles of the same design or manufacture, or items of equipment of the same type and manufacture.[1]

4.     NHTSA specifically points to accelerator controls that break or stick being an

example of a "safety-related" defect.

5.     Upon information and belief, Defendant became aware of this safety defect through

the investigations of Acura vehicles brought into service dealerships by customers, from consumer

complaints to the National Highway Traffic Safety Administration ("NHTSA"), as well as through

various recalls including a 2015-2019 Acura Fuel Pump Control Failure Safety Recall affecting

2016-2018 MDX vehicles.[2] In this recall, Acura specifically highlights that a restriction in "vehicle

acceleration" is a "safety risk. . . which increases the risk of a crash."

6.     In fact, Acura instructs its drivers to report safety defects, such as this, to NHTSA

in its owners' manuals for both the Acura MDX and RDX lines, thus confirming its awareness that

drivers are reporting problems they have with their vehicles to NHTSA.  A review of NHTSA's

public records reveals that Acura drivers have followed this instruction in mass, flooding the

NHTSA with complaints regarding this dangerous, safety defect.

7.     Upon information and belief, Acura, based upon pre-production testing, pre-

---

[1] *See* https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/14218-mvsdefectsandrecalls_041619-v2-tag.pdf

[2] *See* NHTSA Recall Number 19V-060, Recall Date: 01/29/2019. *https://owners.acura.com/service-maintenance/recalls?id=*

production design failure mode analyses, production design failure mode analyses, service records of its dealerships, complaints to NHTSA, aggregate warranty data from its dealerships, and repair order and parts data from its dealerships, is and has been aware of the acceleration defect in the Class Vehicles and has concealed the defect and its associated safety hazard from Plaintiff and Class members.

8.     Despite possessing exclusive and superior knowledge of this defect, Acura has failed to notify owners of Class Vehicles of the defect, has not recalled all affected Class Vehicles to correct the acceleration defect, and has made no attempt to compensate defective Vehicle owners for the diminution in vehicle value.

9.     While Acura has issued a recall regarding certain MDX vehicles having acceleration issues, as noted above, it has failed to recall all Class Vehicles for this acceleration defect and has not notified all owners and lessees of the Class Vehicles, informing them of the defect.

10.     Consumers rely on automobile manufacturers to design, manufacture, market, and sell vehicles that are safe and protect against the risk of bodily injury.  Consumers do not expect vehicle manufacturers to make or install products that increase the risk of injury or malfunction while the vehicle is in ordinary use.

11.     Plaintiff is among the thousands of owners and lessees of the Class Vehicles who reasonably expected that her vehicle would function properly, and safely.  Plaintiff relied both on Acura's representations as to the safety of its vehicles, and on Acura's failure to disclose and glaring omissions as to this safety defect.  Plaintiff and other owners and lessees of the Class Vehicles have been misled by Acura's long-term advertising and marketing campaigns regarding its vehicles' exemplary safety, and omissions as to this defect.  As a consequence, Plaintiff

purchased a vehicle that at any moment can place her, her passengers, and other drivers and pedestrians lives at risk due to its unexpected deceleration.

12.     This lawsuit is intended to compel Acura to notify owners and lessors of all Class Vehicles; to issue a recall for all Class Vehicles to fix this acceleration issue; and to compensate Acura owners and lessors for their losses arising from the defect.

13.     There are no differences in the acceleration issues reported in the Class Vehicles.

## II.     PARTIES, JURISDICTION, AND VENUE

**Plaintiff**

14.     Plaintiff Sandra M. Ferrera is a Florida citizen residing at 945 Viera Avenue, Coral Gables, Florida 33146.  She is a natural person over the age of twenty-one, and otherwise *sui juris*.

15.     Ferrera leased her 2019 Acura MDX in May 2019 from Rick Case Acura located at 875 North State Road 7, Fort Lauderdale, Florida 33137.

16.     Rick Case Acura is an Acura dealership that operates as an agent of Acura.

17.     Ferrera paid a premium price to lease her 2019 Acura MDX, because she trusted Acura to provide a premium, high-quality and safe automobile.  Prior to leasing her vehicle, Ferrera reviewed or heard Acura's warranties and advertisements publicizing its reputation for safety and reliability.  These materials or advertisements did not disclose that certain Acura models, including the MDX, had an acceleration defect.  The value of Ferrera's vehicle has been diminished as a result of its defective acceleration.  Had Ferrera known of the acceleration defect, she would not have leased her vehicle, or would not have paid as much for it as she did.

18.     Ferrera operates her 2019 MDX in a reasonably foreseeable manner and as it is intended to be used.

19.     Nevertheless, in the short time that she has had her Class Vehicle, Ferrera has

experienced rapid deceleration twice, both times while driving on the highway.  The first time, as she was changing lanes, Ferrera's vehicle seemed to shut down, although the electronics and air conditioning continued to function.  The vehicle decelerated rapidly, until it suddenly regained power.  The second time, Ferrera was driving straight, not turning or changing lanes, when the same thing occurred.  Ferrera's husband has also experienced a deceleration event while driving the vehicle.  Both times, Ferrera was frightened and worried that the vehicle was unsafe.

20.     There are no material differences between Plaintiff's facts and those of the thousands of other putative Class members who purchased or leased Class Vehicles with an expectation that they would be safe.  The Plaintiff and putative Class members have been similarly damaged by Acura because they did not receive the benefit of their bargain when they purchased or leased Class Vehicles that are of a lesser standard, grade, or quality than represented.  Acura knew, or should have known, that the Class Vehicles had acceleration defects and kept this knowledge from the public, the Plaintiff, and the putative Class members, and instead marketed the Class Vehicles as safe, reliable, and defect-free.

21.     The Plaintiff and putative Class members have been deprived of having a defect-free vehicle and Defendant has been, and is being to this day, unjustly enriched from its unconscionable delay in issuing a recall on all Class Vehicles.

**<u>Defendant</u>**

22.     Defendant American Honda Motor Co., Inc. d/b/a Acura is a California company with its principal place of business at 1919 Torrance Boulevard, Torrance, California 90501.  Acura is Honda's luxury brand and the product of an operating division launched by Honda in 1986.  Acura conducts business in every state and the District of Columbia.

23.     The Acura division maintains its principal place of business at Honda's Torrance,

California headquarters.

24.     At all relevant times, Acura, directly or through its agents, manufactured, distributed, warranted, sold, and leased the Class Vehicles throughout the United States and in this District.  Further, Acura, directly or through its agents, marketed and promoted the sale of the Class Vehicles throughout the United States and in this District.  In particular, Acura operates no fewer than five different dealerships in Miami-Dade and Broward counties.

### Jurisdiction and Venue

25.     This Court has original jurisdiction over this class action pursuant to the Class Action Fairness Act ("CAFA") and 28 U.S.C. § 1332(d) because members of the proposed Class are citizens of states different from Acura's home state of California, and upon information and belief the total amount in controversy in this action exceeds $5,000,000 exclusive of interest and costs.  Jurisdiction is also proper in this Court under 28 U.S.C. § 1331 because Plaintiff brings federal Magnuson-Moss claims, 15 U.S.C. §2301, *et seq*.  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

26.     This Court has personal jurisdiction over Acura pursuant to Florida Statutes § 48.193(1)(a)(1), (2), and (6) because Acura, directly or through an agent, conducts substantial business in this judicial district; some of the actions giving rise to the claims took place in this judicial district; and some of the claims arise out of Acura, directly or through an agent, operating, conducting, engaging in, or carrying on a business or business venture in Florida, committing a tortious act in this state, and causing injury to property in Florida arising out of Acura's acts and omissions outside of Florida; and at or about the time of such injuries Acura was engaged in solicitation or service activities within Florida, or products, materials, or things processed, serviced, or manufactured by Acura were used or consumed within Florida in the ordinary course

of commerce, trade, or use and/or Acura, directly or through an agent, derived substantial revenue from its activities within this State.

27.     Florida has significant contacts with Acura, as there are no fewer than twenty Acura dealerships in Florida.  Acura dealerships are agents or alter egos of Acura.

28.     Acura's purposeful availment of Florida renders the exercise of jurisdiction by this Court over it and its respective affiliated or related entities permissible under traditional notions of fair play and substantial justice.

29.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because the named Plaintiff resides in this judicial district and purchased her Defective Vehicle in this district.  Acura transacts business in Florida, and a substantial portion of the practices, events, and omissions complained of herein occurred in this judicial district.

30.     All conditions precedent to this action have occurred, been performed, or have been waived.

### III.     FACTUAL ALLEGATIONS

**Background**

31.     Acura has intentionally cultivated, and long enjoyed, a reputation for being Honda's luxury automobile brand in the United States.  For 30 years Honda has marketed its Acura as its premier vehicle product utilizing the slogan "Precision Crafted Performance."  However, as NHTSA complaints and Plaintiff's experience reflect, 2016 through 2020 Acura MDX and RDX models' performance has been and continues to be compromised due to their unexpected and random deceleration.

32.     Acura knew, or should have known, that 2016 through 2020 MDX and RDX models were experiencing unanticipated and unexpected rapid deceleration while drivers tried to

accelerate the vehicles.  Consumers, relying on Acura's longstanding reputation for quality vehicles, paid heightened prices for Acura Vehicles that pose a serious and unpredictable risk of injury to drivers, occupants and the public because of the acceleration defect.

33.    Since 2015, Acura has advertised, distributed, leased, and sold numerous Class Vehicles while simultaneously publicizing and promoting the safety of its vehicles.  Specifically, Acura has proactively promoted itself as a safety leader and innovator in the luxury segment as a result of both the 2016 MDX and 2016 RDX's safety scores from the NHTSA, misleading potential customers into thinking that should they purchase an Acura, they would be buying one of the safest luxury cars on the road.

**The 2016-2020 Acura MDX and RDX Product Line Have a Common Uniform Defect**

34.    Targeted online searches for the defect paint a different picture than what Acura promotes on its website and in its advertisements.  In multiple locations online, including NHTSA's website, Acura vehicle owners have publicly shared their experiences with the acceleration defect.

35.    As of the filing of this Action, there are over fifty complaints from drivers of 2016 through 2020 Acura MDXs and RDXs referencing unexpected rapid deceleration published on the National Highway Traffic Safety Administration ("NHTSA") website.[3]

36.    For example:

- A 2019 Acura RDX driver, NHTSA ID Number 11277657, incident date October 30, 2019, complained that "[o]n October 30, 2019, I was passing a dump truck on rt. 539 in New Jersey[.] I had just accelerated to complete the pass. As I was completing the pass, the engine lost power and the engine malfunction light began blinking . . . . The car decelerated and would not go over 20 mph. I was quickly able to pull onto the shoulder to avoid being hit by the truck I just passed . . . . The dealer was unable to duplicate the issue [and] [t]he vehicle was returned to me."

---

[3] National Highway Traffic Safety Administration, Safety Issues & Recalls, Vehicle Search. https://www.nhtsa.gov/recalls

- A 2019 Acura RDX driver, NHTSA ID Number 11257204, incident date September 22, 2019, complained that "[My] vehicle lost all engine power when accelerating to pass from approximately [sic] 60 mph . . . . Very dangerous if passing on a 2 lane highway."

- A 2019 Acura RDX driver, NHTSA ID Number 11252764, incident date August 22, 2019, complained that "[w]hile attempting to pass another vehicle on [the] interstate at around 70 mph, [the] car power fail[ed] losing most power . . . leaving us very unsafe! . . . This happened 4 times . . . . Acura can't find any codes and does not have an answer for this safety issue!"

- A 2019 Acura RDX driver, NHTSA ID Number 11219423, incident date June 8, 2019, complained that "I was driving on a major highway accelerating to enter a toll lane. The engine light started flashing and I lost acceleration ability immediately. I had to cross 6 lanes to get to [the] shoulder across a major highway . . . . The dealership says there is no record of the issue in the car logs and therefore [there is] nothing they can do. This was a very dangerous situation and I was lucky that fellow drivers allowed my limping vehicle access to the shoulder before the car completely stopped."

- A 2017 Acura MDX driver, NHTSA ID Number 11205308, incident date February 1, 2017, complained that "I have been complaining for two years that my car intermittently hesitates when accelerating. I have pulled out into traffic and my car has hesitated long enough that I've almost got slammed in the back by another car. The car feels like it is about to stall . . . . [I] [b]rought the car in on several occasions to Acura and since they could not reproduce the hesitation, they decided there was nothing wrong with the car."

- A 2017 Acura MDX driver, NHTSA ID Number 11195860, incident date June 19, 2018, complained that "[d]angerous loss of power while accelerating on the highway! There have been three separate incidences over the last 2 years. While I was trying to accelerate on the highway, the car severely lost power and the 'check engine' light started flashing . . . . The dealership claimed that there was no computer records of problems after each incidence. Acura just issued a recall of the fuel pump on this model year MDX. However, Acura and the local Acura dealership refused the repair due to the lack of computer record of failure."

- The husband of a 2016 Acura MDX driver, NHTSA ID Number 11195949, incident date June 10, 2018, complained that his wife, while traveling alone on interstate 10E in Mobile, Alabama, "lost acceleration" while driving over a bridge. His wife began "frantically pumping the accelerator" as she coasted onto a "narrow shoulder."

- A 2016 Acura MDX driver, NHTSA ID Number 11113899, incident date July 23, 2018, complained that "[w]hen driving around 75 mph on the interstate[,] I went to switch lanes and when pressing the accelerator nothing happened and acceleration

was not possible . . . . [I] was extremely lucky to get the car to the shoulder without getting injured or killed."

37.     A large number of these complaints indicate that the driver informed Acura of their problem and Acura took no action to remedy the defect.  The NHTSA website is not the only fielding ground for such complaints, and a review of other sites such as carcomplaints.com reveals additional drivers who have experienced this defect, and who have taken to the internet to voice their concerns.

38.     Alarmingly, several of the drivers who took the effort to file these public complaints and reports have noted that upon bringing their cars into Acura to have the defect fixed, Acura advised them that no such problem exists and that there was nothing that could be done.

**Acura Fails to Divulge the Defect**

39.     Acura knew or should have known, prior to selling Plaintiff her Class Vehicle that the vehicle was defective and likely to malfunction during attempts at acceleration.  Similarly, Acura knew or should have known that such a malfunction could cause injury to drivers and passengers as variable and unreliable deceleration could cause the driver to lose control of his or her vehicle while driving, thus endangering not only the occupants of the vehicle, but other people on the road.  Acura possessed exclusive and superior knowledge of this defect but concealed the common acceleration defect from Plaintiff and the Class members. Based upon pre-production testing, pre-production design failure mode analyses, production design failure mode analyses, service records of its dealerships, complaints to NHTSA, aggregate warranty data from its dealerships, and repair order and parts data from its dealerships, Acura was aware of the acceleration defect in the Class Vehicles and concealed the defect and its associated safety hazard from Plaintiff and Class members.  Acura has failed to notify owners of Class Vehicles of the defect, has not recalled all affected Class Vehicles to correct the acceleration defect, and has made

no attempt to compensate defective Vehicle owners for the diminution in vehicle value.

40.     Adding insult to injury, Acura continues to intentionally misrepresent the safety features of the Class Vehicles in its affirmative statements about the safety of its vehicles, and advertising.

**Plaintiff Has Been Damaged**

41.     As a result of Acura's conduct in manufacturing and then selling Plaintiff her Defective Vehicle, and further in concealing the defect, Plaintiff and proposed Class members were harmed and suffered actual damages.  The risk and danger of the Class Vehicles' defective acceleration diminishes the value of the Class Vehicles.

42.     Plaintiff and the proposed Class members were deprived of the benefit of their bargain. The Acura vehicles they purchased or leased were of a lesser standard, grade, and quality than Acura represented, and they did not receive vehicles that met ordinary and reasonable consumer standards for safe and reliable operation.  Plaintiff and Class members paid more for their vehicles than they would have had Acura disclosed the defective acceleration, whether in monthly lease payments or through a higher purchase price.

43.     Acura has unjustly benefitted from putting a defective product on the market, and Plaintiff and the Class members were deprived of safe, defect-free vehicles.

44.     Plaintiff and Class members have also suffered out-of-pocket damages, including but not limited to, loss-of-use expenses, paying for rental cars or other transportation arrangements, and paying to investigate their vehicle defects and repair their Class Vehicles.

45.     Plaintiff brings this action on behalf of herself and the putative Class members to recover damages for their lost benefit of the bargain; out-of-pocket expenses, including repair costs due to the defective acceleration; and to obtain an injunction requiring Acura to issue a

recall and cure the defect and prevent risk of future harms.

**Acura Breaches Express and Implied Warranties**

46.     Acura sells and leases Class Vehicles with express and implied warranties that assure buyers the vehicles are free from defects.  The acceleration defect violates these warranties.

47.     Acura provides a written express warranty to each consumer who purchases or leases a Defective Vehicle directly from Acura.

48.     Under the Uniform Commercial Code, a warranty that goods are merchantable is implied in all contracts for sale, so long as the seller is a merchant with respect to goods of that kind.  U.C.C. § 2-314 (1).  To be "merchantable," goods must be fit for the ordinary purposes for which they are used, and must conform to the promise or affirmations of fact made on labels.

49.     The defective acceleration renders Class Vehicles unfit and unsafe for ordinary use at the time of the Class Vehicles' initial sale or lease.  Further, the acceleration defect fails to conform to the promises of safety described in Acura's warranty.

50.     Acura has breached its warranty of merchantability as a result of the Class Vehicles inability to reliably and safely accelerate.

## IV.      TOLLING OF THE STATUTE OF LIMITATIONS

### A.      Discovery Rule Tolling

51.     Acura's knowing and active concealment of the defect in the Class Vehicles and the misrepresentations and omissions alleged herein toll any applicable statute of limitations.   Through no fault of their own or any lack of due diligence, Plaintiff and Class members could not have discovered that Acura was concealing the Class Vehicles' acceleration defect.

52.     Acura has refused to issue a broad recall of the Class Vehicles and Plaintiff and the Class members have no way of knowing about the defect until their vehicle fails to accelerate

properly.

53.     Plaintiff and Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect or that the Class Vehicles contained an acceleration defect and a corresponding safety hazard.  For this reason, all applicable statutes of limitations have been tolled by operation of the delayed discovery rule.

**B.     Fraudulent Concealment Tolling**

54.     All applicable statutes of limitation have also been tolled by Acura's knowing and active fraudulent concealment and denial of the defect throughout the time period relevant to this action.

55.     Acura is under a continuing duty to disclose the true character, quality, and nature of the Class Vehicles and that the acceleration defect posed a serious and significant safety hazard to the Plaintiff and the Class members.  Acura has not disclosed information about the defective acceleration, and instead, as discussed above, knowingly, affirmatively, or actively concealed such character.

56.     Acura knowingly, actively, and affirmatively concealed the facts alleged herein and Plaintiff and Class Members reasonably relied upon Acura knowing, affirmative, or active concealment when they decided to purchase or lease Class Vehicles.

57.     Because Acura actively concealed, and continue to actively conceal, the defect in the Class Vehicles, it is estopped from relying on any statutes of limitations defense.

**C.     Estoppel**

58.     Acura is under a continuous duty to disclose to Plaintiff and Class members the true character, quality, and nature of the Class Vehicles' acceleration defect. Instead, it actively

concealed the true character, quality, and nature of the defect and knowingly made misrepresentations about the quality, reliability, safety characteristics, and performance of the Class Vehicles.

59.     Plaintiff and Class members reasonably relied upon Acura knowing and affirmative misrepresentations and active concealment of material facts.  Therefore, Acura is estopped from relying on any defense based on statutes of limitations in this action.

## IV.   CLASS ALLEGATIONS

### A.     Class Definitions

60.     Plaintiff brings this action on her own behalf, and on behalf of all persons similarly situated, pursuant to Rules 23(a) and (b)(2) or (b)(3) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

### The Nationwide Consumer Class:

61.     Plaintiff brings this class action and seek to certify and maintain it as a class action under Rules 23(a) and (b)(2) or (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the following proposed nationwide class and state subclasses:

> **All persons in the United States who currently own or lease, or who have owned or leased, one or more Acura MDX or RDX vehicles from the product model years 2016 through 2020.**

### The Florida Consumer Subclass:

62.     Plaintiff alleges statewide class action claims on behalf of:

> **All persons in Florida who currently own or lease, or who have owned or leased, one or more Acura MDX or RDX vehicles from the product model years 2016 through 2020.**

63.     Excluded from each class is Acura, its employees, officers, directors, legal

representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.  Also excluded are claims for any personal physical injuries related to the acceleration defect.

64.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed classes following the discovery period and before the Court determines whether class certification is appropriate.

65.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**Numerosity**

66.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).  There are tens of thousands of Class Vehicles nationwide, including thousands in Florida.  Individual joinder of all Class members is impracticable.

67.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Acura or their agents and dealerships' books and records, as well as state vehicle registrations and sales records.  Plaintiff anticipates providing appropriate notice to each certified class in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**Commonality**

68.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because there are questions of law and fact that are common to each of the classes.  These common

questions predominate over any questions affecting only individual Class members. The predominating common or Class-wide fact questions include, without limitation:

    a.   Whether Acura knew of the acceleration defect;

    b.   Whether Acura knowingly failed to disclose and warn U.S. consumers of the acceleration defect;

    c.   Whether Acura had a duty to disclose to U.S. consumers material facts relating to acceleration defect and the safety risk it presents;

    d.   Whether the owner's manuals provided by Acura to consumers who purchased or leased Class Vehicles sufficiently warns owners or lessees about the safety risk associated with the acceleration defect;

    e.   Whether the Class Vehicles have suffered diminution of value as a result of acceleration defect;

    f.   Whether Acura's marketing of Class Vehicles was likely to deceive or mislead consumers;

    g.   Whether Acura engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices by failing to disclose that the acceleration defect;

    h.   Whether a reasonable consumer likely would be misled by Acura's conduct;

    i.   Whether Acura's conduct as alleged in this action, including the sale of the Class Vehicles with the acceleration defect, constitutes a breach of applicable warranties.

**Typicality**

69.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected and their claims arise from the same wrongful conduct by Acura. Each Class member purchased or leased a Class Vehicle with this acceleration defect and thus as a result has sustained, and will continue to sustain, damages in the same manner as Plaintiff. The relief Plaintiff seeks in this action is typical of the relief sought for the absent Class members.

## Adequacy of Representation

70.     Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is committed to the vigorous prosecution of this action and there is no hostility or conflict between or among the Plaintiff and the unnamed Class members.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

71.     To prosecute this case, Plaintiff has chosen the undersigned law firm, which has substantial experience in the prosecution of large and complex class action litigation and has the financial resources to meet the costs associated with the vigorous prosecution of this type of litigation.  Plaintiff and her counsel will fairly and adequately protect the interest of all Class members.

## Superiority

72.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class members.  The joinder of individual Class members is impracticable because of the vast number of Class members who own or lease the affected Class Vehicles.

73.     Because the monetary damages suffered by each individual class member may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions.  The burden imposed on the judicial system by individual litigation, and Acura, by even a small fraction of the Class members, would be enormous.

74.     In comparison to piecemeal litigation, class action litigation presents far fewer

management difficulties, far better conserves the resources of both the judiciary and the parties, and far more effectively protects the rights of each class member.  The benefits to the legitimate interests of the parties, the court, and the public resulting from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation. Class adjudication is simply superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

75.     Plaintiff is unaware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.   The Court may, on motion of Plaintiff or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; utilize the provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any Class into subclasses.

**Requirements of Fed. R. Civ. P. 23(b)(2)**

76.     Acura has acted or failed to act in a manner generally applicable to the Class members in the Nationwide Class and the Florida subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to either or all of the classes.

**CLAIMS FOR RELIEF**

**COUNT I**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**("FDUTPA"), Fla. Stat. § 501.201 *et seq.***
**against Acura**
**on behalf of Plaintiff Sandra Ferrera and the Florida Subclass**

77.     Plaintiff incorporates by reference the preceding paragraphs as though fully set

forth herein.

78.     The Plaintiff and Florida subclass members are "consumer[s]" engaged in "trade or commerce" within the meaning of FDUTPA.  Fla. Stat. § 501.203 (7), (8).

79.     Acura engages in "trade or commerce" within the meaning of FDUTPA. Fla. Stat. § 501.203(8).

80.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

81.     Acura engaged in unfair and deceptive trade practices that violated FDUTPA, including but not limited to the following:

    a.  Acura represented that the Class Vehicles have safety characteristics that they do not have;

    b.  Acura represented that the Class Vehicles are of a particular standard, quality, or grade, when they are not;

    c.  Acura knew of the acceleration defect in the Class Vehicles but failed to disclose the existence of this defect to consumers or the NHTSA.  Acura knew that such information was material to consumer transactions and vehicle safety;

    d.  Acura actively conceals and misrepresents the true nature of the acceleration defect;

    e.  Acura intended for the Plaintiff and Florida subclass members to rely on their misrepresentations and omissions so that the Plaintiff and the Florida subclass members would purchase or lease Class Vehicles.

82.     Acura's unfair or deceptive acts or practices, including concealing, omitting, or suppressing material facts about the acceleration defect, had a tendency or capacity to mislead; tended to create a false impression in consumers; and were likely to, and did in fact, deceive reasonable consumers, including the Plaintiff and the Florida subclass members, about the safety and reliability of Class Vehicles; the quality of the Acura brand; and the true value of the Class Vehicles.

83.     Acura intentionally and knowingly misrepresented or omitted material facts regarding the Class Vehicles and their acceleration defect with the intent to mislead the Plaintiff and the Florida subclass members.

84.     Acura knew or should have known that its conduct violated the FDUTPA.

85.     Plaintiff and Florida subclass members were and are injured as a result of Acura's conduct because the Plaintiff and the Florida subclass members paid to own or lease a Class Vehicle without an acceleration defect and instead received and overpaid for a vehicle containing this dangerous defect.

86.     Acura's failure to disclose, and active concealment of, the acceleration defect and the dangers and risks it posed were material to the Plaintiff and the Florida subclass members.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

87.     Plaintiff and the Florida subclass members have suffered ascertainable losses as a result of Acura's misrepresentations and failure to disclose information about the acceleration defect. Had they been aware of the defect that existed in the Class Vehicles, Plaintiff and Florida subclass members either would have paid less for their vehicles or would not have purchased or leased their vehicle. The Plaintiff and the Florida subclass members did not receive the benefit of their bargain due to Acura's misconduct.

88.     As a direct and proximate result of Acura's violations of FDUTPA, the Plaintiff and the Florida subclass members have suffered injury-in-fact and actual damages.

89.     Plaintiff and the Florida subclass members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

90.     Plaintiff, on behalf of the Florida subclass members, request that the Court award them actual damages and issue an order requiring Acura to notify the Florida subclass members of the defect and recall the Class Vehicles to remedy the defect as well as award the Plaintiff and Florida subclass members' attorneys' fees; and any other just and proper relief available under FDUTPA.

**COUNT II**
**FRAUD BY CONCEALMENT**
<u>**against Acura**</u>
<u>**on behalf of Plaintiff Sandra Ferrera and Class Members**</u>

91.     Plaintiff re-alleges and incorporate by reference paragraphs 1 through 76 as if fully set forth herein and further allege as follows.

92.     Plaintiff brings this claim on behalf of all Class members under the common law of fraudulent concealment, as there are no true conflicts of law (case-dispositive differences) among the various states.  In the alternative, Plaintiff brings this claim against the Acura under the laws of the states where Plaintiff and Class members purchased their vehicles.

93.     Acura concealed and suppressed material facts concerning the acceleration defect. Acura knew these facts; knew that they were material to consumers; concealed them; and failed to disclose them.

94.     Acura had a duty to disclose the defect because Acura consistently represented that Class Vehicles were reliable and safe; and proclaimed that it maintained the highest safety standards, and the defects were known or accessible only to Acura, who had superior knowledge and access to the facts, and knew that the facts were not known to or reasonably discoverable by the Plaintiff and the Class members.  These omitted and concealed facts were material because they directly impact the safety of the Class Vehicles as well as the price the Plaintiff and Class members would have been willing to pay for their Class Vehicles.

95.     Acura actively concealed or suppressed these material facts, in whole or in part, to induce Plaintiff and Class members to purchase or lease the Class Vehicles at high prices, and to protect its profits and avoid a costly recall, and Acura did so at the expense of the safety of the Plaintiff and the Class members.

96.     Plaintiff and the Class members were unaware of these omitted material facts and would not have acted as they did had they known of the concealed or suppressed facts. The Plaintiff and the Class members' actions were reasonable and justified.

97.     On information and belief, Acura has still not made any disclosure regarding the acceleration defect, despite having knowledge through agents at Acura dealerships and Acura service centers that the defect is evident in vehicles.

98.     Because of the concealment or suppression of the facts, the Plaintiff and the Class members sustained damages because they did not receive the benefit of their bargain and the value of the Class Vehicles has been diminished, which is a direct result of Acura's wrongful conduct.

99.     Acura's acts were done oppressively, deliberately, with intent to defraud, and in reckless disregard of the Plaintiff and the class members' rights and well-being to enrich itself. Acura's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

**COUNT III**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**("Magnuson-Moss"), 15 U.S.C. § 2301, *et seq.***
**against Acura**
**on behalf of Plaintiff Sandra Ferrera and Class Members**

100.    Plaintiff and the class-members re-alleges and incorporate by reference paragraphs 1 through 76, as though fully set forth herein.

101.    Magnuson-Moss provides a private right of action by purchasers of consumer

products against manufacturers or retailers who, among other things, fail to comply with the terms of the written, express, or implied warranties. *See* 15 U.S.C. § 2310(d)(1) (Remedies in consumer disputes).  As alleged above, Mercedes has failed to comply with the terms of its written, express, or implied warranties.

102.    This Court has jurisdiction to decide claims brought under 15 U.C.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)–(d).

103.    The Class Vehicles are "consumer products" as defined by Magnuson-Moss. *See* 15 U.S.C. § 2301(1).

104.    Plaintiff and the Class members are "consumers" as defined by Magnuson-Moss. *See* 15 U.S.C. § 2301(3).

105.    Acura is a "supplier" and "warrantor" as defined by Magnuson-Moss. *See* 15 U.S.C. § 2301(4)-(5).

106.    As a supplier and warrantor, Acura is obligated to afford Plaintiff and the Class members, as consumers, all rights and remedies available under Magnuson-Moss, regardless of privity.

107.    Magnuson-Moss provides a cause of action for, among other things, any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

108.    Acura breached its implied warranties of merchantability, which it cannot disclaim under Magnuson-Moss, *see* 15 U.S.C. § 2308(a)(1), by failing to provide merchantable goods. Plaintiff and the Class members have suffered damages as a result of Acura's breaches of warranties as set forth above.

109.    Any efforts to limit the implied warranties in a manner that would exclude coverage

of the Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit liability for the Class Vehicles is null and void.

110.    Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Acura and the Plaintiff and Class members.

111.    Acura knew that the Class Vehicles were defective and posed safety risks, and that the Class Vehicles would continue to pose safety risks after the warranties purportedly expired. Acura failed to disclose the defect to Plaintiff and other Class members. Therefore, Acura's enforcement of any durational limitations on warranties is unlawful.

112.    Plaintiff and Class members have had sufficient direct dealings with either Acura or its agents and dealerships to establish privity of contract.

113.    Nonetheless, privity is not required here because the Plaintiff and Class members are intended third-party beneficiaries of contracts between Acura and its agents and dealerships, and specifically, of the implied warranties.  The warranties are intended to protect end-consumers, not dealers.  Dealers have no rights under the warranty agreements provided with the Class Vehicles.   Further, privity is not required because the Class Vehicles are dangerous instrumentalities due to their acceleration defect.

114.    Acura's breach of warranty has deprived the Plaintiff and other Class members of the benefit of their bargain.  The amount in controversy of the Plaintiff's individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

115.    Plaintiff and the Class members have suffered, and are entitled to recover, damages as a result of Acura's breach of warranty and violations of Magnuson-Moss.

116.    Acura had an opportunity to disclose information concerning the Class Vehicles' inability to perform as warranted, and to cure its breach of warranty. As yet, Acura has failed to do so.

117.    As a direct and proximate result of Acura's conduct, Plaintiff and other Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease that is, the difference between the value of the vehicle as promised and the value of the vehicle as delivered.

118.    Additionally, or in the alternative, Magnuson-Moss provides for "other legal and equitable" relief where there has been a breach of warranty or failure to abide by other obligations imposed by Magnuson-Moss. *See* 15 U.S.C. § 2310(d)(1). Rescission and Revocation of Acceptance are equitable remedies available to the Plaintiff and the Class members under Magnuson-Moss.

119.    Plaintiff also seeks under Magnuson-Moss an award of costs and expenses, including attorneys' fees, to prevailing consumers in connection with the commencement and prosecution of this action. *See* 15 U.S.C. § 2310(d)(2). The Plaintiff and the Class members intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

**COUNT IV**
**UNJUST ENRICHMENT**
**against Acura**
**on behalf of Plaintiff Sandra Ferrera and Class Members**

120.    Plaintiff and Class members re-allege and incorporate by reference paragraphs 1 through 76 as though fully set forth herein.

121.    Plaintiff brings this claim on behalf of all Class members under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various

states' laws of unjust enrichment.  In the alternative, the Plaintiff brings this claim under the laws of the states where the Plaintiff and Class members purchased or leased their vehicles.

122.    Acura has received and retained a benefit from the Plaintiff and Class members and inequity has resulted.

123.    Plaintiff and the Class members directly conferred benefits on Acura: the price paid for the Class Vehicles which were defectively designed and do not function as advertised.

124.    Plaintiff and the Class members paid their purchase prices in reliance on Acura's representations that the Class Vehicles were safe and fit for ordinary use.  Plaintiff and the Class members would not have purchased the Class Vehicles, or would have paid less, if not for these representations.

125.    Acura benefitted through its unjust conduct by selling Class Vehicles with acceleration defects at a profit and for more than the Class Vehicles were worth. Further, Acura has benefitted through it unjust conduct in refusing to recall and repair the acceleration defect in all Class Vehicles and thus saving that cost.

126.    It is inequitable for Acura to retain these benefits. Acura will be unjustly enriched if it is allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which Acura was unjustly enriched at his or her expense.

127.    Plaintiff does not have an adequate remedy at law.

128.    The amount of Acura's unjust enrichment should be disgorged, in an amount to be proven at trial.

129.    Plaintiff, on behalf of herself and all similarly situated Class members, seeks an award against Acura in the amount by which it has been unjustly enriched at Plaintiff's and the Class members' expense, and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all other similarly situated Class members, request that the Court enter judgment against Acura as follows:

(1)     Declare this action to be a proper class action maintainable under Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and designate and appoint Plaintiff as class and Florida subclass representative and Plaintiff's chosen counsel as Class Counsel;

(2)     Declare that the Class Vehicles are defective;

(3)     Declare that Acura is financially responsible for notifying all Class members about the acceleration defective, issue a recall for all Class Vehicles so as to correct the acceleration defect;

(4)     Declare Acura's conduct, as alleged herein, to be unlawful, deceptive, unfair or deceptive and issue an order temporarily and permanently enjoining Acura from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this action;

(5)     Declare that Acura must disgorge, for the benefit of the Plaintiff and the Class members all or part of the ill-gotten gains they received from the sale or lease of the Class Vehicles, or make full restitution to the Plaintiff and Class members;

(6)     Award the Plaintiff and Class members actual, compensatory, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial under the applicable claims;

(7)     Award the Plaintiff and Class members their reasonable attorneys' fees and costs, as allowed by law;

(8)     Award the Plaintiff and Class members pre-judgment and post-judgment interest as provided by law; and

11W1339

(9)     Award the Plaintiff and Class members any further and different relief as this case may require or as determined by this Court to be just, equitable, and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial for any and all issues triable by a jury.

Respectfully submitted:  December 13, 2019.

/s/*Benjamin Widlanski*
Benjamin Widlanski, Esq. (Florida Bar No. 1010644)
bwidlanski@kttlaw.com
Harley S. Tropin, Esq. (Florida Bar No. 241253)
hst@kttlaw.com
Gail A. McQuilkin, Esq. (Florida Bar No. 969338)
gam@kttlaw.com
Robert J. Neary, Esq. (Florida Bar No. 81712)
rn@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:    (305) 372-1800
Facsimile:    (305) 372-3508

*Counsel for Plaintiff*

11W1339